IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE LEE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:18-cv-265-WKW-CSC |
| | )                               [WO] |
| WALTER WOODS, et al., | ) |
| | ) |
|    Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

## **I. INTRODUCTION**[1]

Plaintiff Willie Lee ["Lee"], filed this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), on March 19, 2018.[2] Doc. 1. This matter is before the Court on Lee's amended complaint filed against Walter Woods, Warden of the Federal Prison Camp in Montgomery, Alabama ["FPC Montgomery"], Safety Compliance Administrator Tiffany Bailey, Lieutenant General Anthony Cotton, HSA Grindle, and Assistant Warden J. Hutchinson.[3] Lee alleges Defendants violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement because a colony of bats had taken up residence in the roof spaces of his housing unit and by acting with deliberate indifference to respiratory issues he developed as a result of the bats' presence in his living environment. Lee seeks damages and injunctive relief. Doc. 20 at 2–4.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

[2] Lee filed suit during his incarceration at the Federal Prison Camp in Montgomery, Alabama. Lee was released from custody during the pendency of this action. *See* Doc. 45.

[3] *See* Doc. 19 (Order directing Lee to file an amended complaint).

Defendants filed a special report and supporting evidentiary materials addressing the claims in the amended complaint.  Defendants argue this case is due to be dismissed because prior to filing this cause of action Lee failed to properly exhaust an administrative remedy available to him at FPC Montgomery regarding the claims in the amended complaint.[4]  Defendants base their exhaustion defense on Lee's failure to comply with the Bureau of Prison's ["BOP"] internal administrative remedy procedure for its inmates regarding the claims presented.  Doc. 32 at 4.

Upon receipt of Defendants' special report, the court issued an order providing Lee an opportunity to file a response. This order directed Lee to address Defendants' argument "that he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")  [prior to filing this federal civil action]." Doc. 34 at 1 (footnote omitted). The order also advised Lee his response should be supported by sworn affidavits or other appropriate evidentiary materials. Doc. 34 at 2. The order further cautioned Lee that unless "sufficient legal cause" is shown within ten (10) days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a dispositive motion and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law  Doc. 34 at 3.

---

[4] Defendants also argue this action is moot because a contractor was hired to eliminate the bat presence in the housing units at FPC Montgomery. Doc. 32 at 5; *see also* Docs. 32-2—32-5. Generally, however, neither resolution of a claim nor a prisoner's transfer to another facility or release from prison  moots a claim for monetary damages, *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1362 (11th Cir.1984), since a claim for monetary damages "looks back in time and is intended to redress a past injury." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).

Lee took advantage of the opportunity granted to file a response to Defendants' special report. Docs. 37, 41. In response to Defendants' exhaustion defense, Lee acknowledges his failure to exhaust available administrative remedies claiming he was not aware he had to exhaust internal remedy procedures prior to filing this action. Doc. 37 at 1.

The court will treat Defendants' special report as a motion to dismiss regarding the exhaustion defense and resolve this motion in their favor. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted) (holding that "an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Fla. Dept. of Corrs.*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed a defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

## II. STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case," and that cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

3

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

### III. DISCUSSION

Lee challenges the conditions of confinement at FPC Montgomery due to the presence of bats in the ceilings of his housing unit which also caused him respiratory problems for which he claims he was denied medical care. In response to these claims, Defendants assert this case may be dismissed because Lee did not exhaust the administrative remedy provided by the BOP for inmates to seek review of any aspect of their confinement prior to filing a complaint as required by the PLRA. Doc. 32 at 4–5.

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court in a *Bivens* action. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought– monetary damages–cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not available." *Id*. at 1855 (internal quotation marks omitted). Generally, a remedy is "available" when it has "sufficient power or force to achieve an end,[or is] capable of use for the accomplishment of a purpose[.]" *Booth*, 532 U.S. at 737 (internal quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S.

at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90–91, 93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  *Id.* at 83-84; *Bryant*, 530 F3d at 1378 (explaining that to exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (observing that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the BOP provides an administrative remedy to resolve inmate complaints regarding any aspect of their confinement.  *See* 28 C.F.R. § 542.10, *et seq*.  The

6

undisputed evidentiary materials filed by Defendants also demonstrate Lee had access to the grievance procedure while confined at FPC Montgomery, *i.e.*, the procedure was available to him throughout his incarceration at the facility. Generally, a prisoner must complete a three-step sequential process if the informal resolution procedure fails to resolve the issue. As to the formal administrative remedy procedures, an inmate first must submit a Request for Administrative Remedy on a BP-9 form to the Warden within twenty days of the incident. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on a BP-10 form to the Regional Director within twenty days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on a BP-11 form to the General Counsel within thirty days of the Regional Director's response. *See id.*;  Doc. 32-1 at 3–5.

Defendants' evidence includes the Declaration of Grzegorz Bitner ["Mr. Bitner"],  a senior attorney at the United States Penitentiary in Atlanta, Georgia. Mr. Bitner testifies that in his official capacity he has access to official records maintained by the BOP and is familiar with the administrative remedy for inmates contained in the BOP Program Statement 1330.18 and 28 C.F.R. Part 542, Subpart B. Mr. Bitner states he is also familiar with the BOP computer system—SENTRY—which contains inmate information, including tracking information of administrative remedies filed by inmates. In his Declaration Mr. Bitner explains:

> SENTRY can generate a summary of all formal BOP administrative remedy requests and/or appeals (i.e., BP-g, BP-10, BP-11) that a federal inmate has submitted. This document is known as Administrative Remedy Generalized Retrieval. This document has various codes that allow a BOP staff member to identify at what level and where an inmate submitted an administrative remedy request and/or appeal, what the nature of the administrative remedy request and/or appeal is, whether the submission was accepted or rejected, whether the submission was granted or denied, and the dates of the submissions and issued responses. I am

> familiar with reading and interpreting these codes. It is also important to note that the Administrative Remedy Generalized Retrieval identifies each administrative remedy request and/or appeal by their Remedy ID number and that the "ABSTRACT" sections of the entries reflect the nature of the administrative submission.

Doc. 32-1 at 2–6.

The evidentiary material submitted by Defendants also includes a copy of Lee's SENTRY Administrative Remedy Generalized Retrieval record. This record reflects that during Lee's time in BOP custody he filed no administrative remedies. Doc. 32-1 at 6–7.

The undisputed evidentiary material filed by Defendants demonstrates Lee had an administrative remedy available to him during his confinement at FPC Montgomery and there is no evidence this remedy was "unavailable" under the PLRA. *See Ross,* 136 S. Ct. at 1859. Defendants' undisputed evidence further establishes Lee failed to exhaust the administrative remedy process prior to filing this federal civil action. Specifically, despite the availability of an administrative remedy procedure and his access thereto, Lee filed no grievance regarding the subject matter of this action in accordance with the BOP's administrative remedy program. It is likewise undisputed that Lee cannot now exhaust the BOP's administrative remedy procedure as he is no longer confined. *See* Doc. 45 (Notice of Change of Address).

Lee does not dispute his failure to exhaust the administrative remedy provided to him by Defendants while such remedy was available to him. Dismissal with prejudice is therefore appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that "[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining

access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (holding that inmate's "federal lawsuits [were] properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion to dismiss (Doc. 32) be GRANTED to the extent Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy available to him during his confinement at FPC Montgomery prior to initiating this cause of action.

2. This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a) for Plaintiff's failure to properly exhaust an administrative remedy previously available to him at FPC Montgomery.

3. No costs be taxed.

**On or before February 16, 2021,** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions

accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 1st day of February 2021.

/s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE